UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| RICHARD BORGHESI, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>AMARIN CORPORATION PLC, JOHN F. THERO, and STEVEN KETCHUM,<br><br>Defendants. | Civil Action No.<br><br><u>CLASS ACTION</u><br><br>COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS<br><br><u>DEMAND FOR JURY TRIAL</u> |

**INTRODUCTION AND OVERVIEW**

1. This is a class action alleging violations of the anti-fraud provisions of the federal securities laws on behalf of all purchasers of the publicly traded securities of Amarin Corporation plc ("Amarin" or the "Company") between September 24, 2018 and November 9, 2018 (the "Class Period"), who were damaged thereby.

2. Amarin is a biotechnology company. During the Class Period, Defendants made false and misleading statements about a clinical trial of a drug called Vascepa intended to treat cardiovascular disease. Specifically, Defendants issued a press release stating that the study, called REDUCE-IT, had shown a 25% relative risk reduction for patients taking Vascepa.

3. As a result of these statements, the price of Amarin's common stock increased from $2.99 per share to $12.40 per share the next trading day, an increase of more than 414%. This increase was a result of the artificial inflation caused by Defendants' misleading statements.

4. Subsequently, certain scientists who had participated in the REDUCE–IT trials presented the full results of the study at the Scientific Sessions of the American Heart Association on November 10, 2018 in Chicago, Illinois. Those results showed for the first time

1

that the placebo given to patients in the REDUCE-IT study, mineral oil, may have caused cardiovascular problems in the patients taking it. In other words, instead of Vascepa lowering the rate of cardiovascular problems, the placebo used in REDUCE-IT may have increased them.

5. As a result of this disclosure, the price of Amarin's common stock dropped from $21.05 per share to $15.38 per share in two trading days, a decrease of approximately 27%. This decrease was a result of the artificial inflation caused by Defendants' misleading statements coming out of the price.

## JURISDICTION AND VENUE

6. The claims asserted herein arise under and pursuant to §§ 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") (15 U.S.C. §§ 78j(b) and § 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

7. This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1331 and § 27 of the Exchange Act.

8. Venue is proper in this judicial district pursuant to § 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1391(b) as the Company conducts business and has offices within this judicial district.

9. In connection with the acts, conduct and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

10. Plaintiff Richard Borghesi purchased Amarin securities during the Class Period as set forth in the attached certification and was damaged thereby.

11. Defendant Amarin is a biotechnology company with its headquarters located in Dublin, Ireland and its U.S. office is located at 1430 Route 206, Bedminster, New Jersey 07921. Amarin's common stock is traded under the symbol AMRN on the NASDAQ, which is an efficient market.

12. Defendant John F. Thero ("Thero") was President and Chief Executive Officer ("CEO") of Amarin at all relevant times.

13. Defendant Steven Ketchum ("Ketchum"), PhD, was President of Research and Development and Chief Scientific Officer of Amarin at all relevant times.

14. The Defendants identified in ¶¶ 12-13 are sometimes collectively referred to herein as the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

15. Amarin's REDUCE-IT cardiovascular outcomes study commenced in 2011. It enrolled and followed 8,179 randomized patients, and was conducted based on a special protocol assessment agreement with the United States Food and Drug Administration ("FDA").

16. REDUCE-IT was the first global cardiovascular outcomes study to prospectively evaluate the effect of Vascepa, or any therapy, in adult patients with both LDL-cholesterol ("LDL-C") controlled to between 41-100 mg/dL (median baseline 75 mg/dL) by statin therapy and various cardiovascular risk factors, including persistent elevated triglycerides ("TGs") between 150-499 mg/dL (median baseline 216 mg/dL). In addition, the primary prevention cohort had diabetes mellitus and at least one other cardiovascular risk factor, while the secondary prevention cohort had established cardiovascular disease. The design of the REDUCE-IT cardiovascular outcomes study was published in March 2017 in Clinical Cardiology and can be found in the R&D section on the Company's website at www.amarincorp.com.

17. REDUCE-IT tested whether additional cardiovascular risk reduction beyond LDL-C controlled with statin therapy could be achieved in high-risk patients with the putative cardioprotective effects of 4 grams/day of Vascepa.

### False And Misleading
### Statements Issued During The Class Period

18. On September 24, 2018, Amarin issued a press release that stated in relevant part:

BEDMINSTER, N.J. and DUBLIN, Ireland, Sept. 24, 2018 (GLOBE NEWSWIRE) --Amarin Corporation plc (NASDAQ:AMRN), announced today topline results from the Vascepa® cardiovascular (CV) outcomes trial, REDUCE-IT™, a global study of 8,179 statin-treated adults with elevated CV risk. REDUCE-IT met its primary endpoint demonstrating an approximately 25% relative risk reduction, to a high degree of statistical significance ($p<0.001$), in major adverse CV events (MACE) in the intent-to-treat patient population with use of Vascepa 4 grams/day as compared to placebo.

Patients enrolled in REDUCE-IT had LDL-C between 41-100 mg/dL (median baseline LDL-C 75 mg/dL) controlled by statin therapy and various cardiovascular risk factors including persistent elevated triglycerides (TGs) between 150-499 mg/dL (median baseline 216 mg/dL) and either established cardiovascular disease (secondary prevention cohort) or diabetes mellitus and at least one other CV risk factor (primary prevention cohort).

Key topline results include:

Efficacy: Approximately 25% relative risk reduction, demonstrated to a high degree of statistical significance ($p<0.001$), in the primary endpoint composite of the first occurrence of MACE, including cardiovascular death, nonfatal myocardial infarction (MI), nonfatal stroke, coronary revascularization, or unstable angina requiring hospitalization. This result was supported by robust demonstrations of efficacy across multiple secondary endpoints.

Safety: Vascepa was well tolerated with a safety profile consistent with clinical experience associated with omega-3 fatty acids and current FDA-approved labeling. The proportions of patients experiencing adverse events and serious adverse events in REDUCE-IT were similar between the active and placebo treatment groups. Median follow-up time in REDUCE-IT was 4.9 years.

19. As a result of these statements, the price of Amarin's common stock increased from $2.99 per share on Friday, September 21, 2018, to $12.40 per share on Monday, September 24, 2018, an increase of more than 414%.

4

20. On October 3, 2018, Defendant Thero spoke to investors at the Cantor Global Healthcare Conference in New York City. During that presentation, Thero described the results of the REDUCE-IT trial, stating in relevant part: "Our target had been 15% relative risk reduction, we achieved 25% relative risk reduction. And we did that with the p value which was statistically significant p less than 0.001."

21. On November 1, 2018, Defendants held a conference call with investors during which Defendant Thero stated in relevant part:

> A recap of the-top [*sic*] line results we reported for REDUCE-IT study is as follows. Primary endpoint achieved with approximate 25% relative risk reduction in the composite of first occurrence of major adverse cardiovascular events known as MACE. The 25% is on top of LDL cholesterol controlled by statin therapy and REDUCE-IT patients.
>
> LDL cholesterol controlled by statin therapy is generally understood the [*sic*] lower cardiovascular risk by 25% to 35%. Our REDUCE-IT results add approximately 25% cardiovascular risk reduction on top of controlled LDL-C. The top-line risk reduction of approximately 25% was achieved to a high degree of statistical significance P less than 0.001.

22. Defendants' statements set forth above did not disclose that the placebo given to patients in the control arm of REDUCE-IT may have increased the incidence of cardiovascular events in those patients, thus making Vascepa appear more effective than it actually was.

### The Truth Begins To Emerge

23. On November 10, 2018, scientists that conducted the REDUCE-IT trial presented the full results of that study at the Scientific Sessions of the American Heart Association in Chicago, Illinois. In that presentation, the scientists disclosed for the first time "bad" LDL cholesterol levels rose three percent in the Vascepa patients and ten percent in the placebo patients. Other markers of blood fat were also higher in the placebo patients.

24. These data raised concerns that the mineral oil placebos might be interfering with the background regimen of cholesterol-lowering statins that all the patients in the study were

taking. The 10% increase in LDL cholesterol might have led to more adverse cardiovascular events among placebo patients.

25. As a result of these disclosures, the price of Amarin's common stock dropped from $21.05 per share to $15.38 per share in two trading days, a decrease of approximately 27%.

## LOSS CAUSATION/ECONOMIC LOSS

26. During the Class Period, as detailed herein, Defendants made false and misleading statements and engaged in a scheme to deceive the market. This artificially inflated the price of Amarin's securities and operated as a fraud or deceit on the Class. Later, when Defendants' prior misrepresentations and fraudulent conduct became apparent to the market, the price of Amarin's securities fell precipitously, as the prior artificial inflation came out of the price over time. As a result of their purchases of Amarin securities during the Class Period, plaintiff and other members of the Class suffered economic loss, *i.e.*, damages, under the federal securities laws.

## NO SAFE HARBOR

27. Amarin's verbal "Safe Harbor" warnings accompanying its oral forward-looking statements ("FLS") issued during the Class Period were ineffective to shield those statements from liability.

28. The Defendants are also liable for any false or misleading FLS pleaded because, at the time each FLS was made, the speaker knew the FLS was false or misleading and the FLS was authorized and/or approved by an executive officer of Amarin who knew that the FLS was false. None of the historic or present tense statements made by Defendants were assumptions underlying or relating to any plan, projection or statement of future economic performance, as they were not stated to be such assumptions underlying or relating to any projection or statement of future economic performance when made, nor were any of the projections or forecasts made

by Defendants expressly related to or stated to be dependent on those historic or present tense statements when made.

## APPLICABILITY OF PRESUMPTION OF RELIANCE: FRAUD ON THE MARKET

29. Plaintiff will rely upon the presumption of reliance established by the fraud-on-the- market doctrine in that, among other things:

    a) Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

    b) The omissions and misrepresentations were material;

    c) The Company's securities traded in an efficient market;

    d) The misrepresentations alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

    e) Plaintiff and other members of the Class purchased Amarin securities between the time Defendants misrepresented or failed to disclose material facts and the time the true facts were disclosed, without knowledge of the misrepresented or omitted facts.

30. At all relevant times, the market for Amarin securities was efficient for the following reasons, among others:

    a) As a regulated issuer, Amarin filed periodic public reports with the SEC; and

    b) Amarin regularly communicated with public investors via established market communication mechanisms, including through regular disseminations of press releases on the major news wire services and through other wide-ranging public disclosures, such as communications with the financial press, securities analysts and other similar reporting services.

## CLASS ACTION ALLEGATIONS

31. Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons who purchased the publicly traded securities of Amarin during the Class Period (the "Class"). Excluded from the Class are Defendants, directors and officers of Amarin and their families and affiliates.

32. The members of the Class are so numerous that joinder of all members is impracticable. The disposition of their claims in a class action will provide substantial benefits to the parties and the Court. Amarin had more than 293 million shares outstanding, owned by thousands of persons.

33. There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the members of the Class which predominate over questions which may affect individual Class members include:

    a)    Whether Defendants violated the Exchange Act;

    b)    Whether Defendants omitted and/or misrepresented material facts;

    c)    Whether Defendants' statements omitted material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading;

    d)    Whether Defendants knew or recklessly disregarded that their statements were false and misleading;

    e)    Whether the prices of Amarin securities were artificially inflated; and

    f)    The extent of damage sustained by Class members and the appropriate measure of damages.

34. Plaintiff's claims are typical of those of the Class because Plaintiff and the Class sustained damages from Defendants' wrongful conduct.

35. Plaintiff will adequately protect the interests of the Class and has retained counsel who are experienced in securities class actions. Plaintiff has no interests which conflict with those of the Class.

36. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

## COUNT I

### (For Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Against All Defendants)

37. Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

38. This Count is asserted against the Company and the Individual Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

39. During the Class Period, the Company and the Individual Defendants, individually and in concert, directly or indirectly, disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

40. The Company and the Individual Defendants violated § 10(b) of the Exchange Act and Rule 10b-5 in that they: employed devices, schemes and artifices to defraud; made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and/or engaged in acts, practices and a course of business that operated as a fraud or deceit upon

plaintiff and others similarly situated in connection with their purchases of the Company's securities during the Class Period.

41. The Company and the Individual Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated, or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the securities laws. These defendants by virtue of their receipt of information reflecting the true facts of the Company, their control over, and/or receipt and/or modification of the Company's allegedly materially misleading statements, and/or their associations with the Company which made them privy to confidential proprietary information concerning the Company, participated in the fraudulent scheme alleged herein.

42. The Individual Defendants, who are the senior officers and/or directors of the Company, had actual knowledge of the material omissions and/or the falsity of the material statements set forth above, and intended to deceive Plaintiff and the other members of the Class, or, in the alternative, acted with reckless disregard for the truth when they failed to ascertain and disclose the true facts in the statements made by them or other personnel of the Company to members of the investing public, including Plaintiff and the Class.

43. As a result of the foregoing, the market price of the Company's securities was artificially inflated during the Class Period. In ignorance of the falsity of the Company's and the Individual Defendants' statements, Plaintiff and the other members of the Class relied on the statements described above and/or the integrity of the market price of the Company's securities during the Class Period in purchasing the Company's securities at prices that were artificially

inflated as a result of the Company's and the Individual Defendants' false and misleading statements.

44. Had Plaintiff and the other members of the Class been aware that the market price of the Company's securities had been artificially and falsely inflated by the Company's and the Individual Defendants' misleading statements and by the material adverse information which the Company's and the Individual Defendants did not disclose, they would not have purchased the Company's securities at the artificially inflated prices that they did, or at all.

45. As a result of the wrongful conduct alleged herein, Plaintiff and other members of the Class have suffered damages in an amount to be established at trial.

46. By reason of the foregoing, the Company and the Individual Defendants have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder and are liable to the Plaintiff and the other members of the Class for substantial damages which they suffered in connection with their purchases of the Company's securities during the Class Period.

## COUNT II

**(For Violations of Section 20(a) of the Exchange Act Against The Individual Defendants)**

47. Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

48. During the Class Period, the Individual Defendants participated in the operation and management of the Company, and conducted and participated, directly and indirectly, in the conduct of the Company's business affairs.  Because of their senior positions, they knew the adverse non-public information regarding the Company's business practices.

49. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the

Company's financial condition and results of operations, and to correct promptly any public statements issued by the Company which had become materially false or misleading.

50. Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which the Company disseminated in the marketplace during the Class Period. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause the Company to engage in the wrongful acts complained of herein. The Individual Defendants, therefore, were "controlling persons" of the Company within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of the Company's securities.

51. Each of the Individual Defendants, therefore, acted as a controlling person of the Company. By reason of their senior management positions and/or being directors of the Company, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, the Company to engage in the unlawful acts and conduct complained of herein. Each of the Individual Defendants exercised control over the general operations of the Company and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

52. By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by the Company.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment as follows:

A. Declaring this action to be a proper class action pursuant to Fed. R. Civ. P. 23;

B. Awarding Plaintiff and the members of the Class damages and interest;

  C.  Awarding Plaintiff's reasonable costs, including attorneys' fees; and

  D.  Awarding such equitable/injunctive or other relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: March 12, 2019        Respectfully submitted,

**POMERANTZ LLP**

*/s/ Jonathan D. Lindenfeld*
Jonathan D. Lindenfeld
Jeremy A. Lieberman
J. Alexander Hood II
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
Email: jlindenfeld@pomlaw.com
Email: jalieberman@pomlaw.com
Email: ahood@pomlaw.com

**POMERANTZ LLP**
Patrick V. Dahlstrom
10 South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181
Facsimile: (312) 377-1184
Email: pdahlstrom@pomlaw.com

*Attorneys for Plaintiff*